NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOSE CRUZ,

        Plaintiff,

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS, *et al.*

        Defendants.

Civil Action No. 15-8813 (JLL)

OPINION

**LINARES**, Chief District Judge.

Presently before the Court is Defendant Derek McGee's Motion for Partial Summary Judgment seeking judgment in Defendant's favor as to Plaintiff Jose Cruz's federal civil rights claims, brought pursuant to Federal Rule of Civil Procedure 56. (ECF No. 27). Plaintiff has filed a response to the motion. (ECF No. 28). Although Defendant sought additional time to file a reply, (*see* ECF Nos. 29–30), he has not filed same within the time permitted by the Federal Rules of Civil Procedure and Local Civil Rules. For the following reasons, this Court will grant the motion, will dismiss Plaintiff's § 1983 excessive force claim for failure to exhaust, and will remand Plaintiff's remaining claims to state court.

## I.    BACKGROUND

As this Court previously explained,

> Plaintiff's complaint arises out of an incident which occurred within Northern State Prison's law library on February 26, 2015. On that date, at approximately 2:15 p.m., Plaintiff alleges that Defendant Derek McGee, a corrections officer employed at the prison, called Plaintiff a "pervert" and then "assaulted [Plaintiff] by beating him and throwing him across the floor." (Document 1 attached to ECF

> No. 1 at 4). Plaintiff further alleges that this assault resulted in "severe and permanent" injury including back injuries, internal bleeding, and mental anguish/emotional distress. (*Id.* at 5). Based on these allegations, Plaintiff raises the following claims [against Defendant McGee[1]]: a state law tort claim against . . . for assault [and] an excessive force claim brought pursuant to 42 U.S.C. § 1983 in which he claims that McGee violated his Eighth Amendment rights by assaulting him. (*Id.* at 5-7).

(ECF No. 7 at 1–2).

On July 20, 2017, Plaintiff was deposed in connection with this matter. (*See* Document 7 attached to ECF No. 27). During that deposition, Plaintiff was questioned regarding the steps he took to seek administrative relief based on the assault he claims to have suffered. (*Id.*). At his deposition, Plaintiff asserted that his attorney both called and wrote letters to the administrator of Northern State Prison, the facility in which the incident took place, and that these calls and letters led to an investigation of the incident by the prison's internal investigations officers. (*Id.* at 38-40). When asked whether he had taken any other actions or filed any grievances or remedy forms to administratively address his claims, Plaintiff stated that he did not file any grievance or remedy because he was "locked up" for "two weeks," and during that period was not allowed to meet with his attorney nor was he allowed any pencils or writing materials. (*Id.* at 41). According to Plaintiff, this two-week detention period was the result of his being placed in disciplinary custody for having medication he was "supposed to have" shortly after he was released from lock up following the dropping of the administrative charges he received during the library assault incident. (*Id.* at 38–41). Although Plaintiff was apparently released following this two-

---

[1] Plaintiff initially also pled a state law assault claim against Defendant's employer, the New Jersey Department of Corrections, based on a theory of vicarious liability. This Court dismissed that claim following a motion by the Department as such a claim is specifically foreclosed by the New Jersey Tort Claims Act. (*See* ECF Nos. 7-8).

2

week period back into the prison's general population, he testified at the deposition that he did not file any grievance or remedy form as to the assault. (*Id.* at 41).

## II. DISCUSSION

### A. Legal Standard

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment, a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," but must not make credibility determinations or engage in any weighing of the evidence. *See Id.*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v.*

*Nat'l Westminster Bank N.J.*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial." *Serodio*, 27 F. Supp. 3d at 550.

**B. Analysis**

1. Plaintiff's procedural objections

Before reaching the merits of Defendant's current motion, the Court must address two procedural objections raised by Plaintiff. First, Plaintiff argues that Defendant's motion should be denied as it was filed beyond the time provided by Federal Rule of Civil Procedure 56(b). According to the rule, a timely summary judgment motion may be filed "at any time until 30 days after the close of all discovery" unless "a different time is set by local rule or the court orders otherwise." In arguing that Defendant's filing came substantially after this thirty-day post-discovery deadline, however, Plaintiff ignores the fact that the Court did, indeed, order otherwise—pursuant to an order of Magistrate Judge Joseph A. Dickson, Defendant was specifically permitted to file his motion through Saturday June 30, 2018. (*See* ECF No. 26). Although Defendant did not file his motion until July 2, the following Monday, this Court finds that this *de minimis* delay in filing can readily be classified as a case of excusable neglect at worst, and the Court is therefore free to consider the "late" filing notwithstanding Plaintiff's objection, especially in light of the fact that Defendant's motion would be dispositive as to Plaintiff's sole federal claim. *See, e.g.,* Fed. R. Civ. P. 6(b)(1)(B) (Court may extend time to file even after time

has expired upon a showing of excusable neglect); *see also Bentley v. Atl. Cnty.*, No. 05-2942, 2008 WL 5712889, at *5 (D.N.J. Mar. 6, 2008) (stating that a district court is free to consider a late summary judgment motion where to do otherwise would lead to a waste of judicial time and resources).

In his second procedural objection, Plaintiff contends that, because Defendant did not plead failure to exhaust administrative remedies in his answer in this matter, he is now barred from raising that defense at summary judgment. Generally, failure to exhaust is an "affirmative defense the defendant must plead and prove." *Small v. Camden Cnty.*, 728 F.3d 265, 268–69 (3d Cir. 2013). Such affirmative defenses "ordinarily are raised in responding to a pleading," but the Third Circuit and other courts have permitted "lack of exhaustion [to] be asserted [for the first time] in a motion for summary judgment if the plaintiff is not harmed by the delay." *Brown v. Deparlos*, 492 F. App'x 211, 216 (3d Cir. 2012); *see also Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2006) (claiming that failure to plead exhaustion only amounts to waiver where plaintiff was prejudiced, a plaintiff is not prejudiced where he was aware of the exhaustion issue and "confronted the defense in responding to the motion for summary judgment"). In this matter, Plaintiff has been represented by counsel throughout this litigation, and Plaintiff was clearly aware of the exhaustion issue, at the latest, when the issue was brought up during his deposition in July 2017. Likewise, in responding to the summary judgment motion, Plaintiff has directly confronted the exhaustion issue, and it thus appears that Petitioner has not been prejudiced by the failure of Defendant to previously waive the exhaustion issue. As Plaintiff has not been prejudiced by the late raising of this issue, the Court does not find that the exhaustion defense has been waived in this matter. *Deparlos*, 492 F. App'x at 216–17; *see also Curtis*, 436 F.3d at 711; *Williams v. Nish*,

No. 11-0396, 2015 WL 106387, at *4–5 (M.D. Pa. Jan. 7), *aff'd*, 512 F. App'x 81 (3d Cir. 2015). As neither of Plaintiff's procedural objections are sufficient to warrant this Court's rejecting Defendant's summary judgment motion, this Court will now turn to the merits of that motion.

2. Plaintiff's Failure to Exhaust

In his summary judgment motion, Defendant argues that Plaintiff's § 1983 excessive force claim should be dismissed because Plaintiff, who was incarcerated at the time he filed his complaint in this matter, failed to administratively exhaust his claims. Pursuant to 42 U.S.C. § 1997e, a prisoner is required to exhaust all available administrative remedies before he may file a federal civil rights suit challenging "prison conditions." *Woodford v. Ngo*, 548 U.S. 81, 84–85 (2006). A prisoner is required to meet this exhaustion requirement before filing suit "even where the relief sought – [such as] monetary damages – cannot be granted by the administrative process." *Id.*; *see also Booth v. Churner*, 532 U.S. 731, 734 (2001). Where an administrative procedure is available and capable of being used, a plaintiff seeking to challenge prison conditions via a federal civil rights action must fully and properly exhaust his administrative remedies prior to filing suit, and exceptional circumstances will not excuse a plaintiff's failure to exhaust. *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016).

Because this exhaustion requirement applies to all individuals who were prisoners at the time they filed a civil rights suit regardless of whether they are later released, *see Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir 2001), and because the requirement applies to claims of excessive force which are considered to be claims addressing prison conditions, *see Booth v. Churner*, 206 F.3d 289, 298 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (the "exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"), Plaintiff's § 1983 excessive force claim is subject to the exhaustion requirement, and any failure to exhaust before filing his suit would render that claim subject to dismissal unless Plaintiff falls into the statutory exception discussed in *Ross*. This exception to the exhaustion requirement will only apply where there is no administrative remedy available either because no remedy has been provided to prisoners, the administrative remedy is incapable of being used because it acts as a "simple dead end," or the procedure is so confusing or draconian that "all but the most skillful" prisoners are prevented from properly exhausting their claims. *Ross*, 136 S. Ct. at 1859–61. A prisoner's transfer from one prison to another within the same state prison system, however, does not relieve him of the obligation to exhaust his claims, nor will such a transfer render his administrative remedies unavailable. *See Jackson v. Grundy*, 877 F. Supp. 2d 159, 176–77 (D.N.J. 2012); *see also Williamson v. Wexford Health Sources, Inc.*, 131 F. App'x 888, 890 (3d Cir. 2005); *Napier v. Laurel Cnty., Ky*, 636 F.3d 218, 223 (6th Cir. 2011) ("[g]enerally, the transfer of a prisoner from one facility to another does not render the grievance procedures at the transferor facility 'unavailable' for the purposes of exhaustion").

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. A prisoner therefore properly exhausts his administrative remedies only by seeking all available remedies while at least substantially complying with the rules and regulations set out by the applicable administrative body, in this case the state prison system. *Id.* at 90–103; *Small*, 728 F.3d at 272 (completion of the administrative review process "means 'substantial' compliance with the

prison's grievance procedures"). In determining whether a prisoner has successfully exhausted, the courts look to the grievance regime of the prison facility to determine what steps are required to fully exhaust, and compliance with those procedures is all that is required to properly exhaust a claim. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). Because exhaustion is a threshold issue affecting a plaintiff's entitlement to relief, it is for the Court, and not a jury, to determine whether a given plaintiff has properly exhausted his claims, even to the extent of resolving any factual disputes as to the exhaustion issue. *Small*, 728 F.3d at 269–71.

New Jersey's "Inmate Remedy System is a comprehensive system that includes the opportunity for an inmate to submit an 'Inmate Inquiry Form' or 'Inmate Grievance Form' and, in response to the resulting decision or finding, to submit an 'Administrative Appeal.'" N.J. Admin Code § 10A:1-4.4(c) (2018). Fully exhausting administrative remedies therefore requires both that the prisoner submit an inquiry form or grievance form, and an administrative appeal of any adverse decision on the inquiry or grievance form. § 10A:1-4.4(d). These remedy forms "must be complete, legible, and include a clear and concise statement" of the prisoner's claim, and "shall contain the full name, [inmate] number and, when required, signature of the inmate submitting the form." § 10A:1-4.4(e). Upon the filing of an inquiry or grievance form, a prisoner will receive a response within fifteen or thirty days respectively as to the two types of form, unless the coordinator of the prison's grievance system determines more time is needed, in which case the prisoner shall be so informed. § 10A:1-4.4(i), 4.5(d). Upon receiving a final response to the form, Petitioner may file his administrative appeal, within ten calendar days, at which point he will receive a final decision on his appeal within ten further calendar days. § 10A:1-4.6. Although the administrative code provides specific timelines for appeal, there does not appear to be any

8

requirement that the initial grievance form be submitted within a certain time period relevant to the underlying event. Although the inmate handbook Petitioner received from Northern State Prison did not contain a full listing of these regulations, it did contain the following complaint applicable to claims such as his:

> [a]ny complaints involving staff members should be written on an "I.R.F." (Inmate Remedy Form) and forwarded to the Office of the Administrator. Upon receipt of the complaint, it will be reviewed and forwarded to the appropriate department head for investigation. The results of the investigation will be reviewed and a response will be sent. If no response is received by the inmate within 30 days, that inmate may submit an Administrative Remedy Form.

(ECF No. 28 at 9). Thus, Plaintiff should have, at the very least, been aware of the requirement that he file an inmate remedy form to begin the exhaustion process.

In this matter, there is no dispute that Plaintiff never filed an inmate grievance form or inmate remedy form. Plaintiff himself confirmed that he never filed a grievance or similar form, and instead asserted only that his lawyer wrote letters and called prison staff. Although this did lead to an investigation by the prison's internal investigations unit, (*see* ECF No. 28 at 10), such letters neither comply with the handbook Plaintiff received, nor the requirements laid out in the New Jersey Administrative Code. It is thus clear that Plaintiff did not properly exhaust his claims, and absent Plaintiff meeting the statutory exception to the exhaustion requirement, his § 1983 claim would be subject to dismissal for lack of exhaustion.

Although Plaintiff admits that he did not properly exhaust his claims, he presents two arguments which he contends should excuse this failing—first, that he was temporarily detained without paper and writing utensils and thus the remedy was "not available" at the time of the attack, and second, that he performed the "equivalent of exhaustion" when he discussed the attack with

the prisons internal investigations officers. Turning to the first argument, Petitioner's contention that his administrative remedies were "unavailable" because he was confined without the proper forms suffers an obvious fatal flaw—by Plaintiff's own admission, this period of detention without access to grievance forms or writing materials only lasted two weeks. Because there is nothing in the record or administrative code which required him to file his grievance during those two weeks, the detention period is immaterial as to the availability of Plaintiff's administrative remedies. A prisoner need only exhaust his remedies before filing suit, not on the actual date of the incident about which he complains. Because Plaintiff could have filed his remedy forms any time after this two weeks expired and prior to the expiry of the two-year statute of limitations period applicable to § 1983 claims, Plaintiff's brief period of close custody did not render his administrative remedies "unavailable," and Plaintiff does not meet the statutory exception to the exhaustion requirement.

Plaintiff also argues that remedies were unavailable because he was "intimidate[d]" into staying quiet. The only factual support for this assertion is Plaintiff's testimony at his deposition that one of the officers who responded to the alleged assault told him not to say what happened to other arriving officers at the scene. Plaintiff did not testify that he was otherwise told not to speak of the incident. Given the fact that Plaintiff clearly did talk to the prison's investigation into his allegations following his attorney's letters to the prison, it is clear that these few scant words to Plaintiff on the day of the incident did intimidate him into silence. Plaintiff has not alleged, let alone testified, that he attempted to file any grievance and was denied the opportunity to do so or threatened should he pursue a grievance. Instead Plaintiff simply states he did not file any grievance or make an attempt to do so. Plaintiff did not testify that this was the result of

the prisons internal investigations officers. Turning to the first argument, Petitioner's contention that his administrative remedies were "unavailable" because he was confined without the proper forms suffers an obvious fatal flaw—by Plaintiff's own admission, this period of detention without access to grievance forms or writing materials only lasted two weeks. Because there is nothing in the record or administrative code which required him to file his grievance during those two weeks, the detention period is immaterial as to the availability of Plaintiff's administrative remedies. A prisoner need only exhaust his remedies before filing suit, not on the actual date of the incident about which he complains. Because Plaintiff could have filed his remedy forms any time after this two weeks expired and prior to the expiry of the two-year statute of limitations period applicable to § 1983 claims, Plaintiff's brief period of close custody did not render his administrative remedies "unavailable," and Plaintiff does not meet the statutory exception to the exhaustion requirement.

Plaintiff also argues that remedies were unavailable because he was "intimidate[d]" into staying quiet. The only factual support for this assertion is Plaintiff's testimony at his deposition that one of the officers who responded to the alleged assault told him not to say what happened to other arriving officers at the scene. Plaintiff did not testify that he was otherwise told not to speak of the incident. Given the fact that Plaintiff clearly did talk to the prison's investigation into his allegations following his attorney's letters to the prison, it is clear that these few scant words to Plaintiff on the day of the incident did intimidate him into silence. Plaintiff has not alleged, let alone testified, that he attempted to file any grievance and was denied the opportunity to do so or threatened should he pursue a grievance. Instead Plaintiff simply states he did not file any grievance or make an attempt to do so. Plaintiff did not testify that this was the result of

intimidation, instead he merely said he did not have papers or pencils during his two-week lock up period. Thus, Plaintiff's argument is not supported even by Plaintiff's own testimony, and nothing in the record supports the application of the unavailability exception to Plaintiff's case. Plaintiff was thus required to exhaust his remedies, and failed to do so.

Plaintiff's only remaining argument as to exhaustion is his assertion that he performed the "equivalent of exhaustion" by having his lawyer report the incident to the prison via letters and phone calls and then complying with the prison's resulting investigation. Plaintiff presents no caselaw in support of the assertion that it is sufficient to perform the "equivalent of exhaustion" to meet the requirements of § 1997e. As the Supreme Court explained in *Woodford*, it is *not* sufficient to perform merely an equivalent of exhaustion, a prisoner must actually make direct efforts to comply with all of the prisons rules, regulations, and deadlines, and anything short of substantial compliance with all of the requirements of these rules, including those applying to taking a proper administrative appeal, will not meet the requirement of the statutes. 548 U.S. at 90-103; *Small*, 728 F.3d at 272. Petitioner made no attempt to comply with the prison's grievance system or its rules and regulations. Thus, whether the practical result of his attorney's letters and the ensuing investigation may have been placing the prison on notice of Plaintiff's allegations, this Court cannot say that such actions "substantially complied" with the prison's rules and regulations, and it is thus clear that Plaintiff's "equivalent of exhaustion" does not meet the requirements of § 1997e. *Small*, 728 F.3d at 272. Because Petitioner thus failed to exhaust his federal civil rights claim, and because nothing in the record supports the claim that the prison remedy system was actually unavailable to Plaintiff, Plaintiff has failed to meet the exhaustion requirement of § 1997e, and his § 1983 excessive force claim must be dismissed for failure to exhaust as a result.

Defendant's motion for partial summary judgment shall therefore be granted.

Because this Court will grant the partial summary judgment motion and will dismiss Plaintiff's sole federal claim – his excessive force claim – for lack of exhaustion, this Court must determine what should be done with Plaintiff's remaining state law claims, for which Defendant has not sought summary judgment. Pursuant to 28 U.S.C. 1367(c), "a district court[] may decline to exercise supplemental jurisdiction over" a state law claim if the court "has dismissed all claims over which it has original jurisdiction." Although the statute itself provides the district court with discretion to determine whether or not to dismiss or remand a state law claim in such a situation, the Third Circuit has held that "[w]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Beckinger v. Twp. of Elizabeth*, 434 F. App'x 164, 170 (3d Cir. 2011) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). Indeed, where only state law claims remain, the Third Circuit has often found that "judicial economy, convenience and fairness to the parties counsel *against* retaining supplemental jurisdiction over them," especially in cases which were originally filed in state court. *Id.*; *see also Markowitz v. Ne. Land Co.*, 906 F.2d 100, 106 (3d Cir. 1990) ("the rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court"). This remains the case even where a specific civil matter has been pending in federal court for a considerable period of time. *See, e.g., Fernandez v. City of Elizabeth*, 486 F. App'x 150, 155 (3d Cir. 2012) (affirming remand after dismissal of all federal claims even where case had proceeded in federal court for approximately four years). As this

matter was originally filed by Plaintiff in the Superior Court of New Jersey for Essex County, and because the Court has dismissed all claims over which it had original jurisdiction and concludes that the interests of judicial economy and fairness weigh in favor of remanding Plaintiff's remaining claims, the Court will remand Plaintiff's remaining state law claims to the Superior Court.

### III. CONCLUSION

For the reasons stated above, this Court will grant Defendant's motion for partial summary judgment and will dismiss Plaintiff's § 1983 claims for lack of exhaustion. Plaintiff's remaining state law claims shall be remanded to state court. An appropriate order follows this opinion.

Dated: August 28, 2018.

JOSE L. LINARES
Chief Judge, United States District Court